No. 23,436.

RUBEN M. WEBER, *Appellee*, v. AUSTIN C. BAGWELL et al.,
*Appellants*.

SYLLABUS BY THE COURT.

1. EXCHANGE OF LAND—*No Agreement That Deed Was to be Placed in Escrow—No Fraud Proven*. The record examined, and *held*, that no agreement that a certain deed should be held in escrow by defendant Porter is shown. *Held*, further, that the record shows no justification for the finding that two of the defendants connived to cheat and defraud the plaintiff.

2. SAME—*Judgment Directed*. *Held*, that such judgment should be rendered as the evidence in view of the preceding paragraph may warrant.

Appeal from Cheyenne district court; CELSUS A. P. FALCONER, judge. Opinion filed January 7, 1922. Reversed.

*J. L. Finley*, of St. Francis, and *C. C. Flansburg*, of Lincoln, Neb., for the appellants.

*E. E. Kite*, of St. Francis, for the appellee.

The opinion of the court was delivered by

WEST, J.: Weber owned some land in Cheyenne county on which was a mortgage of $1,000. He wanted to sell the land and employed Bagwell to find him a purchaser. Thomas L. Porter, at Alma, Neb., where Bagwell lived, had a piece of town property. The petition alleged that Bagwell offered to give the Alma property and $3,000 for the land, to which Weber agreed; that he went to Alma and executed a deed to his land, leaving the name of the grantee blank at Bagwell's request, which deed was placed in the possession of Porter, to be held in escrow until plaintiff received from Bagwell a deed to the Alma property and $3,000; that at this same time Porter executed a deed for the Alma property which Bagwell delivered to the plaintiff "and persuaded him to place of record a deed for said residence property; but this plaintiff has never . . . been in possession thereof nor exercised any control or ownership over said property. . . ;" that he had not received the $3,000 nor delivered the deed to his land, but that Bagwell and Porter for the purpose of cheating him out of his property had recorded his deed, which was delivered to Bagwell without the plaintiff's knowledge or consent; that for the further purpose of cheating him out of his property Bagwell had made to Porter a $1,500 mortgage on the land, which Porter had recorded.

The court found that plaintiff made a deed in blank and delivered it to Porter to be held in escrow until Bagwell should pay the $3,000, and then deliver it to Bagwell; that Porter and Bagwell fraudulently caused Bagwell's name to be inserted as grantee and the deed to be recorded; that plaintiff did not get the $3,000, and that the delivery of the deed was unauthorized; also, that the Alma property had been reconveyed to Porter by the plaintiff; that a deed to certain Nebraska land was executed to plaintiff which should be redeeded to Bagwell, and the deed to the Kansas land should be canceled. No judgment was rendered against Porter. The defendant, Bagwell, and a subsequent grantee appeal.

It is insisted that there was no evidence to support the finding of fraud or of the alleged escrow agreement.

The plaintiff testified in substance, among other things, that there was an arrangement between him and Bagwell concerning a trade for his property in Cheyenne county.

"A. Well, he said he had everything ready, when I signed my deed over to him that I was to get this city property in Alma and my three thousand dollars. We was to go down and see this man that was to buy this McPherson county land that afternoon and close the deal."

Further, that he made out his deed in blank in Mr. Hunt's office, and Mr. Porter came in with his deed to the Alma property—

"A. And I drawed my deed out in blank and this was to be left with Mr. Porter, received this deed of mine in escrow as credit for his property, and was to be left there until we closed the deal down at Riverton that same day.

"Q. Did you get any conveyance there at that time, or any deed made for you to the Alma property? A. Yes, sir.

"Q. At the time that your deed was left there with Mr. Porter in Mr. Hunt's office, you say that it was to be held by Mr. Porter until you and Mr. Bagwell could go to Riverton? A. Yes, sir. . . .

"Q. You didn't go down and get your three thousand dollars? A. No, sir. . . .

"Q. What did you do with the deed after you executed it, after you signed and acknowledged it? A. It was left in Mr. Hunt's office.

"Q. Left where? A. In Mr. Hunt's office with Mr. Porter.

"Q. What was the purpose in leaving it there? A. Well, as security until I got my end of the deal, I think.

"Q. It was to be left there, was it, until you got the Porter deed? . . .

"Q. After you had signed your name to that deed and it had been acknowledged, you turned the deed over to Bagwell, to give to Porter, didn't you? A. Well, it was right on the bench or table there, lying on the table.

"Q. And Bagwell picked it up with your knowledge and consent? A. I don't just remember.

"Q. You didn't object to it? A. No. . . .

"Q. Did you just leave the deed on the table there and then Bagwell picked it up; is that the last you saw of it? A. I think it was.

"Q. And you didn't have any other agreement than that you have spoken of? A. No, sir. . . .

"Q. What was the escrow to be; what were the terms of it? A. Well, there wasn't any particular terms. It was to be left there till I got—

"Q. Who did you tell that to? A. It was understood between me and Bagwell.

"Q. You never told that to Porter? A. Well, he heard it, I think. . . .

"The court: Who was it that said that this deed would be held in escrow until you received your three thousand dollars? You said it was to be done, now who was it said that? A. I think it was Mr. Bagwell.

"The court: How did you come to give it to him any more than any one else? A. You mean give it to Mr. Porter?

"The court: Yes, that is what they have asked you. What was said to you? A. Well, the deal was supposed to be closed that day. I don't know as anything in particular was said.

"The court: What was said along that line and by whom was it stated? A. Bagwell says, 'We will leave this deed here with Mr. Porter until we get this other end of the deal straightened up.'"

Mr. Hunt testified that the conversation clearly indicated that Mr. Weber was to receive the property known as the Tom Porter old residence, and there were also indications that Mr. Weber was to receive some western land, to be deeded to him by another party in person.

"Q. Was anything said relative to having the deeds in escrow? A. Not at this time.

"Q. Had there been any previous conversation to that effect? A. Between myself and Mr. Bagwell there had been."

Thomas L. Porter testified that the parties called him up and said they were at Mr. Hunt's office and ready to close the deal; that he took his deed to his property made out to Mr. Weber. They had their abstract and he examined it and found the title in Mr. Weber, and they had the deed from Mr. Weber made out in blank.

"A. Mr. Bagwell entrusted me with the deed absolutely; and after dinner he and his wife came down and we went back down to my office. I had the note and mortgage in blank, and I said, 'Your name will have to go into this deed' and he came and inserted Bagwell's name in the deed; and I supposed that Weber knew that Bagwell was getting the property; anyway, Bagwell's name was put in the deed, and he signed the note and mortgage to me for $1,500; and of course, I mailed the deed and mortgage to Cheyenne county for record immediately."

He further testified that after supper Bagwell came over to see him and wanted to know what he had done with the deed and was told he had mailed it down for record.

"Q. Have you ever held the deed to the Cheyenne county land in escrow? A. No, sir."

Mr. Bagwell testified that they called Mr. Porter to the office and he refused to deliver his deed to Hunt until he got the mortgage on the land. He then went to Mr. Hunt's office and had the deed made out to the land. Mr. Weber delivered his deed to him and Mr. Porter delivered his deed to the Alma property to Mr. Weber.

"Q. Why was the deed to the Kansas land made in blank when it was made at Hunt's office? A. Why, it was made with the protection of T. L. Pórter, as he refused to give a deed to his property until he got the mortgage as surety."

We have quoted the most significant evidence touching the alleged deposit of the deed with Mr. Porter in escrow and are unable to find any basis for the conclusion that such a delivery was made. The facts seem to be that at Mr. Hunt's office a deed from Porter to Weber for the Alma property was delivered for which Bagwell made a $1,500 mortgage on the Kansas land owned by Weber, and in order that the mortgage might be valid, Weber's name was inserted as grantee in the deed so that the record would show clearly touching his mortgage to Porter, and it is also clear that Weber and Bagwell started to Riverton to close up the other deal to get the $3,000, and shortly returned; and afterwards Porter took a reconveyance of his property and satisfied the mortgage on the Kansas land, and that eliminated him from the transaction, so that the plaintiff did not even ask judgment against him. We find nothing to indicate that Porter and Bagwell connived together to deprive the plaintiff of his land or that Porter either accepted or violated any escrow touching the Weber deal.

Whatever the rights of the parties to the action may be, the petition and the judgment are based on the proposition that there was an escrow agreement which was violated by T. L. Porter. The prayer does not appear, so it is not known just what relief was sought, but the judgment directed that the deed from Weber to Bagwell for the Kansas land be canceled, and that Weber be required to convey to Bagwell the McPherson county, Nebraska, land. The only contention presented to us is that the finding and judgment touching the alleged escrow agreement and its violation were erroneous, and counsel's contention in this respect we find to be correct.

The judgment is reversed and the cause remanded for further proceedings in accordance herewith.

OPINION DENYING A REHEARING.

(Filed April 8, 1922.)

The defendant, Bagwell, has moved for a rehearing and complains that we were mistaken in stating in the opinion that the Cheyenne county land had against it a mortgage of a thousand dollars. The record bears this interpretation.

Attention is called to the statement in the opinion that the transaction all took place in Mr. Hunt's office. The record indicates that the insertion of Bagwell's name in the blank deed occurred in Mr. Porter's office.

We are also criticized for saying that Porter afterwards satisfied the mortgage made to him by Bagwell. He really assigned it.

We are still unable to see how the finding that Porter and Bagwell connived together to cheat Weber, and that Porter agreed to hold the deed in escrow, can be substantiated by the evidence. We think the testimony fairly shows that Porter's deed was properly recorded; that after Bagwell's name was inserted in the Weber deed Bagwell's mortgage to Porter was properly recorded, and that the Riverton expedition for the purpose of raising three thousand dollars for some reason failed.

Finding, after reconsideration, that the former opinion expresses the deliberate conclusion of the court, the motion for rehearing is denied.